## RODMAN CHEMICAL CO. v. STEEL TREATING EQUIPMENT CO.

(Circuit Court of Appeals, Sixth Circuit. April 5, 1923.)

No. 3736.

**Patents ⬤⟶328—949,446, for material for case-hardening steel, void for lack of invention.**

The Rodman patent, No. 949,446, for material for case-hardening steel, *held* void for lack of invention, in view of the prior act.

Appeal from the District Court of the United States for the Eastern District of Michigan; Arthur J. Tuttle, Judge.

Suit in equity by the Rodman Chemical Company against the Steel Treating Equipment Company. Decree for defendant, and complainant appeals. Affirmed.

Jo. Bailey Brown and Frederick W. Winter, both of Pittsburgh, Pa. (Winter & Brown, of Pittsburgh, Pa., and Pagelsen & Spencer, of Detroit, Mich., on the brief), for appellant.

V. H. Lockwood, of Indianapolis, Ind. (R. G. Lockwood, of Indianapolis, Ind., on the brief), for appellee.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge. Suit for infringement of United States patent No. 949,446, February 15, 1910, to Hugh Rodman, upon material for cementing or case-hardening steel, which result is effected by impregnating with additional carbon the surface of low-carbon parts while raised to a high degree of heat, thus making about the softer core a high-carbon "case," in practice to a depth of from $\frac{1}{32}$ to $\frac{1}{8}$ of an inch. Plaintiff is the assignee of the patent. The claims in issue are Nos. 1, 2, and 5, which are reproduced in the margin.[1] The defenses are invalidity of the patent for lack of novelty and invention, and noninfringement. The District Court held the patent invalid for the reasons urged by defendant, and dismissed the bill, without filing an opinion.

The art of case-hardening steel is very old; it is understood to have been practiced for about 200 years. Under modern methods it has been effected in either of three ways: (1) By so-called "dry-packing," in which the steel parts are imbedded in a dry, carbonaceous material inclosed in a sealed pot placed in a furnace, whereby the temperature of the pot and its contents is raised to a red heat; (2) gas carbonizing, by which carbonaceous gas, heated from without, is passed over the red-hot steel in the pots; (3) the fused salt method, by which the red-hot steel parts are plunged into a liquid bath of salts, such as cyanide of potassium, etc. In carbonizing steel throughout (as distinguished

---

[1] "1. Cementing or case-hardening material containing coke and energizing substance which will maintain a smooth surface on the metal parts to be treated.

"2. Cementing or case-hardening material containing coke and soda ash."

"5. Cementing or case-hardening material consisting essentially of coke and soda ash."

from case-hardening), the carbonizing material is introduced into the furnace which holds the molten metal. The effect of each of these methods is essentially the same; that is to say, a higher carbonization of the steel in the "case," or throughout, as the case may be, through the absorption of carbon to a greater or less extent.

The specification states, among other things, that case-hardening by dry-packing had hitherto involved the use of more or less costly carbonaceous material, such as bonedust or powdered charcoal, used alone or mixed with soda ash or lime; that it had been thought that the action of the bonedust or powdered charcoal is accelerated or intensified by adding thereto such substances as lime or sodium carbonate; that the inventor has found that coke, which he declares to have in itself practically no case-hardening properties, but which he states is a comparatively pure and cheap form of carbon, can be rendered active as a case-hardening material by adding thereto an energizing substance, such as lime, sodium hydrate, or soda ash, which materials, it is stated, have been found not to mar or pit the surface of the metal articles or parts treated. The inventor defines "energizing substance" as "such material, not necessarily carbonaceous material, as will, when added to an inactive carbonaceous substance, render such carbonaceous substance active as a carbonizing agent." The asserted discovery that coke so energized is convertible from an inert into an active agent broadly constitutes the claimed invention of the patent.[2] The statement that the material referred to does not mar or pit the surface (in substance embodied in the first claim) is apparently designed to distinguish from a reference to the prior art which will hereafter be noticed.

That in the carbonizing art coke was, before Rodman, recognized broadly as a carbonizing element, appears by its conceded use in carbonizing molten steel, in connection with lime as a flux; also by the admitted fact that certain prior British patents mention or suggest the use of coke as a substitute for charcoal in materials for generating carbonizing gas.[3] Assuming, at least for the purposes of this opin-

[2] By way of greater elaboration, plaintiff's counsel define the claimed invention as "the discovery of a new compound of old materials (coke and soda ash) for the first time used and disclosed as packing for case hardening," or "as the discovery that coke, an inert carbon, not naturally adapted to case hardening, and regarded as useless, by practical men in the art could be substituted for charcoal in the previously known charcoal and soda ash packing compounds, with resulting advantages of durability, greater thermal conductivity, structural strength, longer life of material, greater availability of raw material, cheapness of manufacture, and other improvements."

[3] The James and Jones patent of 1868 (No. 1,181) expressly states that "powered coke may be economically substituted for charcoal." Aube (No. 3,364) of 1880 (classified by defendant as in the dry-packing art, and by plaintiff in that of gas carbonizing), in which the inventor places in the retort layers "of charcoal or of coke," alternating with layers of the iron articles to be treated, etc. In the Imray patent (No. 7,351) of 1895 (apparently a dry-packing process) it is said that "the carbonaceous material may be animal, or vegetable charcoal or coke or a mixture of any or all of those." For present purposes it is not of controlling importance that in the Imray patent no energizer is mentioned for either coke or charcoal.

ion, that Rodman's invention relates only to material for use in the dry-packing process, as dintinguished from the gas-carbonizing method (in spite of the unrestricted language of his claims), we think the gas process is in an art clearly analogous to that of dry-packing. In both the carbonization is effected by direct action of the carbonaceous gases upon the steel to be treated, and the fact that in the dry-packing art there is immediate contact between the treated steel and the carbonizing agents (lacking in gas carbonizing) is not enough to prevent substantial analogy between the two arts. Indeed, the reason for the asserted difference in the carbonizing effect of coke in the gas-carbonizing and dry-packing arts, respectively, is not made clear by the record.

Turning to the dry-packing art: The Froggatt British patent of 1884 (No. 10,260) discloses a mixture composed of charcoal, soda ash, and limestone "in suitable proportions"; the proportions of the ingredients found in actual process most successful being also given. The United States patent to Bates of 1890 (No. 428,445) discloses a carbonizing mixture for case-hardening by the dry-packing method, comprising carbon, "such as pulverized charcoal, still coke or the like, cryolite, to which may be added salt, lime or rosin or carbonate of soda." Still coke is coke formed by the distillation of petroleum. The words "still coke or the like" are, on their face, broad enough to include ordinary commercial coal coke; and plaintiff's counsel concedes that this patent "describes a number of packing mixtures for case-hardening," and that "some of these comprise coke and soda ash." Plaintiff, however, criticizes the Bates patent as a reference upon the ground, supported by testimony of competent experts, that cryolite pits the surface of the steel casing, and that therefore its disclosure in connection with the other ingredients renders the whole combination not only useless but harmful.[4] Passing by the testimony on defendant's part of an able and expert metallurgist to the effect that the Bates' compound, including the cryolite, is not harmful, the record contains no suggestion that his compound, if limited to coke and lime, or coke and soda, would be inoperative. As already said, there was concededly a disclosure of coke in connection with carbonate of soda, which is soda ash.[5] We have not cited all the prior art references relied upon by defendant, nor all of plaintiff's criticisms upon those cited, where not, in our opinion, seriously impairing the effect we have given them.

In our opinion direct anticipation of the patent in suit is not found in the prior art. The question of invention, however, stands on a different basis. It is conceded that, in view of the prior art, plaintiff

In the Kraft patent (No. 4,976) of 1876 the inventor says he may use "vegetable charcoal, peat, coke, or any like kind of vegetable materials," for packing the steel.

[4] This Bates patent is presumably the patent from whose disclosure the first claim of the Rodman patent in suit was intended to distinguish.

[5] Claims 3 and 4 of the patent in suit, neither of which is infringed or sued upon, call for a hardening material, the one containing "coke, soda ash, and lime," the other "coke and lime."

has the burden of showing, among other things, that Rodman definitely taught the art something it did not know before, and that the new combination was not obvious.

We do not understand it to be claimed that coke is a wholly inert carbonizer of steel, or that it was so regarded by practical users previous to Rodman. The contrary, we think, fairly appears from the use of coke, not only in carbonizing metal throughout, but in the process of gas-carbonizing. In each of these processes charcoal and coke were both usable. The object of all forms of carbonizing is to increase carbon content. We think the utmost of plaintiff's permissible contention in this respect is that coke is not in itself a sufficiently active carbonizer as to produce practical results under conditions attending dry-packing methods. We are not convinced that coke was regarded by practical men as useless in the dry-packing art. More than one inventor, as shown by prior patents, regarded coke as useful in the art. The effects of their disclosures are not destroyed by the failure to show actual practice of the inventions of these patents. There is no presumption of lack of such practice. Indeed, Rodman concedes that coke is a carbonizer of metals when "practically at the point of fusion."

Coke and charcoal are chemically very similar; each has a high carbon content; each is the result of distillation. The chemical distinction lies principally in a slight difference in ash content; structurally there is a slight difference. Even charcoal was not in itself a sufficiently active carbonizer to produce in the dry-packing method satisfactory commercial results without the aid of an energizer. The very fact that such energizer was used so indicates; but the evidence thereof is not confined to proof of such use. Until recent years charcoal was cheap and plenty, and there was no occasion to consider coke. The great demand, however, for case-hardening of metals, largely contributed to by automobile manufacture, far exceeded the available supply of charcoal, which thus became several times more expensive than coke. In these circumstances, and in view of the fact that coke was used in carbonizing metal throughout, as well as in the gas-carbonizing process, the disclosures of such use in the dry-packing art already referred to, the fact that soda ash and lime, either singly or in combination, for energizing charcoal were not only disclosed by the prior art but actually in practical use (and notwithstanding that mere analogy is not, in chemistry, usually so certain an index as in mechanics. Toledo Co. v. California Co. [C. C. A. 6] 268 Fed. 201, 204), we think the application to coke of a well-known energizer of charcoal would naturally be obvious to the skilled metallurgist. The case here involves merely a compound of materials.

The favorable public reception of the Rodman compound does not, in our opinion, contribute substantially to a conclusion of invention. It appears that four manufacturers of case-hardening compounds have taken licenses under the patent in suit; two of them manufacture a product said to be practically the same as defendant's, and use, roughly, equal parts of coke and charcoal. None of these licenses were taken out in the early life of the patent. While Rodman estimates the

annual royalties from his licenses at $10,000 to $15,000 per year, there were included therein nine other Rodman patents, and there is no satisfactory evidence of the extent to which the patent in suit contributed, although we assume there was a substantial contribution. Moreover, although plaintiff manufactures two carbonizing compounds for case-hardening, each of these contains charcoal (although that element is not in either specification or claims mentioned as belonging to the compound of the patent, and although Rodman's invention is not claimed to cover the use as case-hardening material of charcoal in combination with soda ash and lime, or with either of those alkalies), and his coke and soda ash compound is not on the market or used by manufacturers except as combined with charcoal. Taking all these facts into account, there is little significance in the fact that a considerable majority of commercial case-hardening compounds contain coke and a chemical energizer as a substantial ingredient of the compound, which means in practical effect that the compounds so used include coke in addition to charcoal, and in part as a substitute in volume therefor. It would therefore seem that, in point of practical and commercial results, what Rodman has done is merely to use for a combination of charcoal and coke an energizer formerly used for charcoal only. There seems to be no claim that the patented compound is superior to the charcoal and alkali compound previously used, except in point of cheapness, availability, and strength; the latter quality enabling its reuse without abrasion and burning, as is said not to be the case with charcoal. But these considerations do not alone create invention; they merely supply the element of utility.

These considerations lead us to conclude that the claims in suit lack invention. The decree of the District Court is accordingly affirmed.