### RODMAN CHEMICAL CO. v. CHAR PRODUCTS CO. et al.

No. 4802.

Circuit Court of Appeals, Seventh Circuit.

Aug. 6, 1934.

Jo Baily Brown and Fulton B. Flick, both of Pittsburgh, Pa., for appellant.

George B. Schley, Verne A. Trask, and Thomas P. Jenkins, all of Indianapolis, Ind., for appellees.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

ALSCHULER, Circuit Judge.

The complaint charged infringement of United States patents to Rodman, No. 1,279,160, 1918, and No. 1,372,832, 1921. The answer alleged invalidity of the claims sued on, and denied infringement. The District Court found that the claims were invalid and not infringed by appellees. The appeal challenges the decree with respect only to patent No. 1,279,160.

The patent is in the art of case hardening steel by the dry pack process, wherein the steel parts to be case hardened are packed and sealed with carbonaceous and energizing materials in a pot or container which is placed in a furnace and heat applied to raise the temperature within the container to a predetermined degree, whereby a gas is formed which penetrates a short distance through the surface of the metal objects, causing them to be carbonized, and upon proper cooling rendering the surface extremely hard and highly resistant to frictional wear. The object of the process is to harden the surfaces of machine parts most subject to wear, such as gears and cogs and bearings generally. Its advantage over carbonizing and hardening the entire object is that, by leaving the inner portion soft and tough, the tendency to brittleness of the object is much minimized.

Case hardening is a very old art, having been quite constantly practiced for about two centuries. The patent describes a carbonizing material having small granular centers or bases relatively inert, each coated or covered by a tacky mixture containing the active carburizing and energizing agents. The resultant product for which patentable advance is claimed is described in the claims in issue, set forth in the margin.

In the briefs are considered many propositions, only a few of which we deem essential to the disposition of the appeal. The main controversy is over the validity of the claims upon the prior art. The patent specification describes the composition and manner of producing one form of practice under the patent, and this is the only disclosure of the actual ingredients employed or manner of practicing the alleged invention. But neither that product nor the process of producing it is reserved in any of the claims in issue, nor does it appear that the particular process or product thus described has ever been used by appellees, nor by any one else.

It is not claimed that in the practicing of the patent new materials are employed, nor that an advanced or more perfect result is attained under its teachings. As to this appellant says in its brief: "The invention is not predicated on the use of any specific ingredients, or proportions of specific ingredients, as will appear. And it does not purport to provide a carburizing agent whose activity is greater than that of all prior carburizers. On the contrary, it aims chiefly to provide carburizing material which is *physically* improved by the *mechanical arrangement* of the invention, whereby substantial advantages flow both to the manufacturer and the user."

Keeping in mind that the patent in suit has to do only with structural arrangement, without any asserted advance over the prior art in ingredients or proportions, we find it specifies a relatively inactive base of preferably "ordinary metallurgical coke" screened between $\frac{1}{4}$-inch and $\frac{1}{8}$-inch openings, with which is mixed a binder of molasses, tar or other hydrocarbon substance. The carbona-

---

* "1. A carburizing material consisting of small masses, and a material in itself highly active as a carburizing agent forming a coating for each of said masses.

"2. A carburizing material consisting of carbonaceous masses, and a material in itself highly active as a carburizing agent forming an active carburizing coating for each of said masses.

"3. A carburizing material consisting of carbonaceous masses having little or no carburizing properties, and a material highly active as a carburizing material forming a coating for each of said masses

and cloaking the carburizing activity of the masses.

"4. A carburizing material consisting of a relatively inert carbonaceous mass having bound thereto a permanent coating of energized carbon material."

"7. A carburizing material consisting of small inert masses and an active coating of carburizing material for each of said masses.

"8. A carburizing material consisting of small coke masses and a permanent active coating for each of said masses containing carbonaceous material and an infusible energizer."

ceous grains are tumbled with the binder, and there is then added the mixed powdered substances containing the energizer, and the tumbling is continued until as much of the powdered substance as may be will have adhered to the binder, thus forming on the surface of the base a coating wherein the powdered energizing substance is embedded. The grains thus coated are then spread out for drying.

Examining the prior patent art, we limit ourselves to patents issued to Rodman. The record discloses twenty patents to Rodman or his assignees for case hardening materials, ten of them dated February 15, 1910, and the others at different times thereafter. It discloses also nine foreign patents thereon issued to him.

United States patent No. 949,442, February 15, 1910, shows much tending to indicate anticipation. The specification refers to the inventor's co-pending application wherein there was disclosed a case hardening material consisting of coke, and an energizing substance which, as will be seen from the patent granted thereon, specifies the use of a binder element having the energizer embedded therein. But in this patent the same binder element is described in the specification and some of the claims as having the function of protecting some of the ingredients against atmospheric and weather deterioration. But we are here interested in what is in fact disclosed, rather than in the stated purpose of the disclosure. Claim 1 is for the method of preventing deterioration in case hardening compounds consisting of carbonaceous and energizing substances by coating "the carbonaceous particles with a protecting substance carrying the energizing substance." Claim 2 is essentially the same and refers to a method of "coating one of the substances with a tacky weather-proof substance in which is embedded another substance." Claims 4, 5, and 6 are:

"4. Cementing material consisting of a mixture of carbonaceous material, an energizing substance and a tacky water proof substance, the energizing substance being embedded in the water proof substance.

"5. Cementing material consisting of a carbonaceous substance and a hydrocarbon protector containing an energizing substance.

"6. Cementing material consisting of a carbonaceous base and a tacky binder containing an energizer."

Calling this coating "protector" or "smear" or "binder," or by any other name, does not limit the disclosure of that patent.

Claims 5 and 6 make no reference to a protecting function, but claim any structure in which there is a carbonaceous base covered by a tacky binding or coating substance wherein the energizing substances are embedded. It seems evident that the structure here in issue definitely appears in that disclosure.

Appellant has a theory, and the patent specification points out, that the center, whatever the substance, should be inert or relatively so, and that the energizing substances are all in the coating. The fact that the preferred coke center intrinsically possesses carburizing effect is met by the statement in the specification that the tacky coating, when it envelops the coke center, acts as a "cloak," so that the carburizing influence of the coke center becomes negligible. To all intents and purposes there is no difference in the constituency of the coating in both patents, and, for anything to the contrary in the patents appearing, they may be identical. If in 1918, when the patent in issue was granted, the coating "cloaked" the carburizing activity of the centers, rendering them "inert or comparatively inert," its effect would have been in no wise different in 1910, the year in which the other patent issued, had the tacky coating been then applied to the carbonaceous base as there pointed out.

No. 949,442 was in issue in this court in Scofield v. Rodman Chemical Co., 290 F. 169. It appears from the discussion in the opinion that question was raised as to whether the patent contemplated the carbon being substantially larger than the energizing substances. While carbon of larger size was more generally employed, the patent does not point this out, and it was held void for want of sufficient disclosure.

But the application referred to in the specification of that patent eventuated in United States patent No. 949,446, February 15, 1910. While the claims of this patent are in the main for a case hardening product consisting of specified ingredients, the specification points out a structure which is quite parallel to that of the patent in suit. It states:

"By energizing substance, I mean such material, not necessarily carbonaceous material, as will when added to an inactive carbonaceous substance, render such carbonaceous substance active, as a carbonizing agent. Various mixtures of coke and these energizing substances may be used, but I find that excellent results may be obtained from a mixture of 100 parts by weight of *coke*

*granules, about ¼ inch diameter,* 15 parts of finely powdered soda-ash and 10 parts of finely powdered slaked lime. I prefer to mix these materials by first adding to the coke granules sufficient oil (preferably a heavy hydro-carbon oil) to cover the surface of the granules and then to add the powdered soda-ash and lime, stirring it so that the powdered soda-ash and lime will adhere to the coke granules.

"I find that the material is improved somewhat as a commercial product by the addition of the oil, for a thorough admixture of the constituents of the material is thus maintained."

As to this patent there is no question of the relative size of the carbon base and the energizer; the former is specified to be about ¼ inch in diameter, which appears to be just about what is pointed out in the patent in suit. Here also the smeared or coated carbonaceous centers would be relatively inert in the same sense that they would be in the patent in suit. The claims of this patent there sued upon were held invalid for lack of invention in Rodman Chemical Co. v. Steel Treating & Equipment Co., 288 F. 471 (C. C. A. 6).

Under same date Rodman was granted United States patent No. 949,449, which is almost word for word like No. 949,446, its single claim being in every material respect like claim 3 of that patent.

In British patent to Rodman No. 484, 1910, there is stated a formula of "80 parts of granulated coke, 20 parts of powdered bituminous coal, 10 parts of powdered soda ash, 15 parts of air slaked lime, sometimes adding, as a means of maintaining an intimate mixture, 5 or 10 parts of oil or other suitable hydrocarbon." The coke granules are not referred to as bases or centers, and there is no mention of a tacky coating over the centers containing the powdered energizing substances. But it is very apparent that when such powdered materials are mixed with an oil or other hydrocarbon the powdered substances will be taken up by the oil and on mixing the whole with coke granules the latter will be surrounded by an oily substance which holds the powdered energizing material. The structural effect would be the same as the patent in suit regardless of the names which are applied to the various parts of the structure.

A similar disclosure is made in French patent to Rodman No. 411,603, 1910, which probably covers the same invention as the British patent. Another French patent to Rodman, No. 423,551, 1911, seems structurally to be a faithful anticipation of the structural patent in suit. It says:

"Various mixtures of coke and activating material can be employed, but one has obtained particularly good results in utilizing a mixture of 100 parts by weight of coke grains of about 6 millimeters diameter, 15 parts of carbonate of sodium $Na_2CO_3$ finely pulverized and 10 parts of slaked lime in fine powder.

"It is preferable to mix these materials by adding first to grains of coke a sufficient quantity of oil, by preference an oil constituted of a heavy hydrocarbon, in a manner to cover the surface of the grains then, to add the sodium carbonate and the pulverized lime and mix the mass in a manner that the carbonate of soda and the pulverized lime adhere to the grains of coke.

"One has found that one improves the material by adding to it the oil, for one thus realizes an intimate mixture of the constituent bodies."

The specification of the patent in suit stresses the inertness or comparative inertness of the centers, saying: "The essence of the invention lies in the observation that only the surface of granular carburizing material is highly active and in the conception that improved material may therefore be constructed by coating an inert, or comparatively inert, particle or small mass with a highly active covering material." It later states: "For the inert centers I prefer ordinary metallurgical coke, as it is cheap, light, permanent, conductive, etc., but other materials, such as crushed brick, charcoal, etc., may be used if desired." It is of no importance that material such as crushed brick is suggested, as no such structure is in issue here. Metallurgical coke centers are clearly old in this art.

The discussion of various other propositions, including that of infringement, has contributed to the amplitude of the briefs herein, and would require our consideration but for our definite conclusion that the structure of the patent in issue is clearly anticipated in the prior patent art. We are in accord with the District Court in its finding of invalidity of the claims sued on, and in decreeing dismissal of appellant's complaint for want of equity.

Decree affirmed.