## NAAMLOOZE VENOOTSCHAFS: W. A. SCHOLTENS CHEMISCHE FABRIEKEN v. COE, Com'r of Patents.

### No. 7978.

United States Court of Appeals for the District of Columbia.

Decided Oct. 19, 1942.

Mr. W. B. Morton, of New York City, with whom Mr. Clarence M. Fisher, of Washington, D. C., was on the brief, for appellant.

Mr. E. L. Reynolds, with whom Mr. W. W. Cochran, Solicitor, United States Patent Office, both of Washington, D. C., was on the brief, for appellee.

Before STEPHENS, EDGERTON, and RUTLEDGE, Associate Justices.

STEPHENS, Associate Justice.

This is an appeal from a judgment of the District Court of the United States for the District of Columbia dismissing appellant's complaint brought under Rev. Stat. § 4915 (1875), 35 U.S.C.A. § 63, to authorize the Commissioner of Patents to issue to the appellant a patent containing claims 3, 4, 5, 9 and 10 of the application of Frederik A. Moller, appellant's assignor, Serial No. 102,047. These claims, which we set forth in full in the margin,[1] de-

---

[1] "3. A method of producing starch products from potatoes comprising subjecting the whole potatoes to a decolorizing process until the skin and the eyes are substantially white, comminuting the decolorized potatoes without previously peeling the same and subsequently converting the comminuted mass into starch products.

"4. A method of producing starch products from potatoes comprising subjecting the whole potatoes to a decolorizing process until the skin and the eyes are substantially white, comminuting the decolorized potatoes without previously peeling the same, stirring the comminuted material with water to which reducing agents have been added, allowing the mixture to settle, removing the liquid, and converting the mass which is thus entirely or partially freed from soluble substances into cold swelling starch.

"5. A method of producing starch products from potatoes comprising subjecting the whole potatoes to a decolorizing process until the skin and the eyes are substantially white, comminuting the decolor-

ized potatoes without previously peeling the same, stirring the comminuted material with water to which reducing agents have been added, allowing the mixture to settle, removing the liquid and drying the mass which is thus entirely or partially freed from soluble substances at temperatures below the gelatinizing temperature.

"9. A method of producing starch products from potatoes comprising subjecting the whole potato to a bleaching process with a hypochlorite solution until the skin and the eyes are substantially white, comminuting the bleached potatoes without previously peeling the same and subsequently converting the comminuted mass into starch products.

"10. A method of producing starch products from potatoes comprising subjecting the whole potato to a bleaching process with a hypochlorite solution until the skin and the eyes are substantially white, comminuting the bleached potatoes without previously peeling the same and subsequently converting the comminuted mass into an adhesive."

scribe, and the application discloses, a process in which whole, unpeeled potatoes are subjected to the action of a bleaching agent and are then comminuted and converted into starch.

Prior to his perfection of the process in question Moller had originated a method of making cold swelling starch direct from potatoes without first producing from them a refined raw starch and then converting the same into cold swelling starch. This had been patented as Dutch patent No. 31,-303, hereinafter referred to as the Dutch patent. It had the advantage of omitting three separate sieving and two tabling operations which had been conventionally employed to separate the insoluble fibre of potatoes from the starch. The process described in the Dutch patent consisted merely of washing the potatoes to remove foreign matter, pulping them in a grinder, washing the pulp in settling tanks to remove the soluble matter and some of the larger pieces of the peel, the fine particles of the peel, however, remaining as specks in the starch. To produce the cold swelling starch the starch milk from this washing was then further processed in the same way in which starch milk made from refined raw starch was formerly processed to produce the cold swelling product. The product of the Dutch process was similar to the cold swelling starch made from refined raw starch except that the specks or fine dark particles referred to above as remaining in the starch gave to the whole body thereof, although the specks constituted but a very small proportion of the total a slight off-color appearance. This made the product unsuitable for use in the manufacture of high grade paper. It was to avoid this defect that the process in the instant case was adopted. The present application is therefore for a patent on an improvement of the process of the Dutch patent.

The process of the application in suit consists in bleaching the skin and eyes of potatoes to be processed while they are still whole, by immersing them for a prolonged period in a strong hypochlorite solution. The result of this bleaching step is a completely decolorized potato; in consequence the fine particles of peel which remain after the processing described in the Dutch patent are no longer dark specks but are as white as the starch itself. The final product of the improved process is indistinguishable from the cold swelling starch made from the refined raw starch of the prior art. No question has been raised in the case as to utility; and it is not claimed by the Commissioner that hypochlorite solution itself had been used in the art for bleaching the skin and eyes of potatoes while whole at the outset of a starch making process. At the trial, however, it was contended by the Commissioner that the addition to the process of the Dutch patent of the bleaching step described did not, in view of prior art, involve invention.

The prior art relied upon by the Commissioner consists of the Dutch patent, a patent to Eckland, No. 1,000,726, a British patent to Siemens, No. 24,455 of 1895, and French patents to Verley, No. 330,914, and Uhland, No. 641,277. The patent to Eckland discloses "improvements in processes for the treatment of grains, tubers and other starch bearing material preliminarily to the production of merchantable starch, glucose, sugar, etc." The Eckland process, while described in both specification and claims as applicable to the treatment of grains, tubers and other starch bearing products, was detailed in the specification in terms of the treatment of maize. The specification says that the "process consists primarily in the steeping or soaking of grain in water saturated ozone for a predetermined time, say from 15 to 48 hours, depending on the condition of the grain, the water being preferably warmed." The specification states also: "It is also well known that ozone possesses to a considerable degree the property of bleaching material with which it is brought in contact and I find that by its use in my process the ultimate product is practically colorless, thereby giving it a great advantage over the starch produced by the sulfurous acid process which is always more or less discolored or of a yellowish tinge." The patents to Siemens, Verley and Uhland disclose the use of hypochlorite solutions for bleaching starch products formed from potatoes after the skin of the potatoes had been removed. It was not disputed by the appellant that hypochlorite solution is a well known bleaching agent; indeed the appellant's witness Horstung testified that it was.

The trial court found so far as here pertinent:

"2. The Moller application discloses a method of producing starch products from

potatoes in which whole and unpealed potatoes are first bleached and then subjected to a series of steps which convert them into starch products.

"3. Dutch patent No. 31,303 discloses the formation of starch products from potatoes by a process which is identical with that recited in the claims involved in this action, except that the bleaching step is omitted.

"4. The Eckland patent No. 1,000,726 discloses a process of making starch products from 'grains, tubers and other starch bearing materials' in which the materials are subjected to a bleaching step before they are reduced to pulp.

"5. The British patent to Siemens No. ·24,455 of 1895 and the French patents to Verley No. 330,914 and Uhland No. 641,-277 disclose the use of hypochlorite solutions in bleaching starch products formed from potatoes.

"6. In view of the disclosures of the Eckland, Siemens, Verley and Uhland patents, there was no invention involved in bleaching the potatoes used in making the starch products of Dutch patent No. 31,-303 by means of a hypochlorite solution, prior to the comminuting of the potatoes."

The correctness of findings Nos. 3 and 5 is admitted by the appellant. Finding No. 4 has support in the disclosure of the Eckland patent. The trial court concluded that the claims of the application involved in the instant case were not patentable over the prior art. We think that conclusion correct.

Potatoes are tubers. The Eckland patent clearly contemplates the bleaching of the "grains, tubers and other starch bearing material" as a preliminary step. No reference being made by Eckland to any peeling or comminution prior to the use of the bleach, it must fairly be taken that he teaches bleaching of the outside of the materials described. Ozone is a bleaching agent. Therefore the appellant can base its assertion of invention over Eckland only upon the choice of hypochlorite solution rather than ozone as a bleaching agent.

The appellant contends that to conclude that in view of the use of ozone as a bleaching agent in the Eckland patent it did not require invention, as distinguished from ordinary skill, to choose hypochlorite solution as the bleaching agent of the instant application is to reason by analogy, i. e., to reason that if one bleaching agent, ozone, would decolor the outside of potatoes, another common bleaching agent, hypochlorite solution, would do the same. The appellant urges that analogical reasoning cannot be relied upon in the field of chemistry but only experiment. It is true that analogical reasoning is more restricted in chemistry than in the field of mechanics. Toledo Rex Spray Co. v. California Spray Chemical Co., 6 Cir., 1920, 268 F. 201; Naylor v. Alsop Process Co., 8 Cir., 1909, 168 F. 911. This is because chemistry is essentially an experimental science in which predictions cannot be made with the same certainty that they can be in mechanics. General Electric Co. v. Laco-Philips Co., 2 Cir., 1916, 233 F. 96; cf. Corona Co. v. Dovan Corp., 1928, 276 U.S. 358, 368, 369, 48 S.Ct. 380, 72 L.Ed. 610; Tyler v. Boston, 1868, 7 Wall. 327, 330, 19 L.Ed. 93. It is therefore true to say that since Eckland did not name hypochlorite solution as a bleaching agent but only ozone, it does not necessarily follow that hypochlorite solution would be a suitable substitute. Experimentation may well have been necessary to determine this. But from the facts that prevision is not certain in chemistry, that progress in the chemical art is reached largely through experiment, and that patents are often upheld where the inventor stumbles upon a discovery (Badische Anilin & Soda Fabrik v. Kalle, C.C.S.D. N.Y.1899, 94 F. 163) it does not follow that every new and useful result accomplished by experiment is patentable. Hamilton Laboratories v. Massengill, 6 Cir., 1940, 111 F.2d 584, certiorari denied, 1940, 311 U. S. 688, 61 S.Ct. 65, 85 L.Ed. 444; L. Sonneborn Sons, Inc., v. Coe, 1939, 70 App.D.C. 97, 104 F.2d 230; Minnesota Mining and Mfg. Co. v. Coe, 1938, 69 App.D.C. 217, 99 F.2d 986; Ruben Condenser Co. v. Aerovox Corp., 2 Cir., 1935, 77 F.2d 266, certiorari denied 1935, 296 U.S. 623, 56 S. Ct. 145, 80 L.Ed. 443; cf. Zotos Corp. v. Rader, 2 Cir., 1937, 91 F.2d 935; Ruben Condenser Co. v. Copeland Refrigeration Corp., 2 Cir., 1936, 85 F.2d 537, 541; De Lore v. St. Louis Lithopone Co., 8 Cir., 1928, 26 F.2d 864, 868; Western Willite Co. v. Trinidad Asphalt Mfg. Co., 8 Cir., 1926, 16 F.2d 446, 450, certiorari denied 1927, 274 U.S. 737, 47 S.Ct. 575, 71 L.Ed. 1317; Rodman Chemical Co. v. Steel Treating Equipment Co., 6 Cir., 1923, 288 F. 471, 474. In the instant case in view of Eckland, even though he named ozone rath-

576

er than hypochlorite solution, and in view of the use of the latter, a common bleaching agent, by Siemens, Verley and Uhland in preparing starch products made from potatoes, we think it presses credulity to say that it required invention to add a preliminary bleaching step with hypochlorite solution to the Dutch process. It is true that in Siemens, Verley and Uhland hypochlorite solution was used to bleach the starch products, not the exterior of the potatoes. But the use of the solution in those patents would at least suggest experimentation with that particular bleaching agent so far as the outside of potatoes is concerned.

The appellant contends that the ozone of the Eckland patent would not be suitable for bleaching potato skin. This argument is based upon the testimony of the appellant's witness Horstung who said on direct examination that ozone was an oxidizing agent which would color the juices of the potato. But he admitted on cross-examination that he did not try ozone itself—because it was not easily obtainable—but tried hydrogen peroxide, which, like ozone, delivers oxygen, and that it would not work on potatoes. It does not necessarily follow, because of the very insecurity of analogical reasoning in chemistry which has been commented upon, that ozone would not be suitable for bleaching the skin of potatoes because hydrogen peroxide would not.

The appellant relies with special emphasis upon Naylor v. Alsop Process Co., supra. The Alsop Process Company, which had purchased a patent known as the Andrews patent covering a process for the bleaching of flour, brought suit for infringement by Naylor. Naylor's defense was invalidity of the Andrews patent. He principally relied upon a process known as the Frichot process for which there had been issued a French and an English patent. In the Frichot process the same industrial result was sought as the Andrews process accomplished. The Frichot process used ozone liberating nascent oxygen; the Andrews process used nitrogen peroxide which also liberated nascent oxygen. The nascent oxygen was the immediate bleaching agent of both processes. Naylor therefore contended that the chemical analogy was such that the Andrews process could not be held patentable over Frichot. The court held otherwise, in part upon the

ground that reasoning by analogy in the field of chemistry is more restricted than in mechanics. The appellant in the instant case argues, therefore, that if reasoning by analogy could not be used to defeat Andrews over Frichot so it cannot be used here to defeat Moller's improvement upon the Dutch patent over Eckland. Superficially this argument is cogent. But it rests upon an insufficient understanding of Naylor v. Alsop Process Co. The court in that case rested its rejection of Naylor's assertion of the invalidity of the Andrews patent only in part upon the proposition that reasoning by analogy is more restricted in chemistry than in mechanics. It based its decision also upon three further grounds: First, although the Frichot ozone process bleached the flour through the agency of nascent oxygen, it also tainted it; thus Frichot operated to warn Andrews against, rather than to guide him toward, the use of nascent oxygen. Second, when Andrews chose nitrogen peroxide for his bleaching agent, he was not simply selecting the best of several well known agents for the accomplishment of the desired result for it was not then known that any of the recognized bleaching agents could be successfully used to bleach flour. This required an agent which would not only bleach but which would accomplish this without also injuring the flour and which could be applied to flour in the usual milling process. Frichot's was the only attempt that had been made and he had succeeded only as to bleaching as such. Third, science and experience warned against the use of nitrogen peroxide. It is a dark brown gas, deepening in color as its temperature is raised, has a peculiar, repulsive odor, it is poisonous when inhaled, and, while it sometimes bleaches, more frequently imparts color, especially to proteins—which are an important constituent of flour. We think the Naylor case obviously distinguishable. In the instant case ozone was a well known bleaching agent as was also hypochlorite solution. Ozone had operated successfully on the outside of tubers in Eckland. Nothing in the use of ozone in Eckland warned against the use of hypochlorite solution. Nothing in hypochlorite solution warned against its own use. Moller must be assumed to have known what itself is here contended by the appellant—that the skin of the potato does not itself contain starch which might possibly be

harmed by a sufficiently strong hypochlorite solution to decolor the skin; and hypochlorite solution had been used directly upon starch products in the Siemens, Verley and Uhland patents. Moller's selection of hypochlorite solution in the instant case was, we think, the selection of a well known bleaching agent and a selection suggested by the art.

Affirmed.