**DOUGLAS AIRCRAFT COMPANY and Douglas H. Moreton, Plaintiffs,**

v.

**Sinclair WEEKS, Secretary of Commerce, and Robert C. Watson, Commissioner of Patents, Defendants.**

**Civ. A. No. 905-57.**

United States District Court
District of Columbia.
June 10, 1959.

Francis C. Browne, Washington, D. C., Gerald H. Peterson, Santa Monica, Cal., for plaintiffs.

C. W. Moore, U. S. Patent Office, Washington, D. C., for defendants.

SIRICA, District Judge.

This is an action under 35 U.S.C.A. § 145 to obtain authorization from this Court for the Commissioner of Patents to issue to the plaintiffs letters patent on their application, Serial No. 316,325 filed October 22, 1952 and entitled "Phosphonate Ester Hydraulic Fluid". The claims deal with a composition of matter or a new and useful improvement thereof consisting of a hydraulic fluid designed to meet specifications for use in modern aircraft hydraulic systems and involving exposure to both high and very low temperatures. Both the Patent Office Examiner and the Patent Office Board of Appeals ruled that the plaintiffs' claims were not patentable since their subject matter had been described in a patent granted to Watson, No. 2,636,862, on April 28, 1953 based on an application filed June 9, 1950.

Some of the important characteristics of an effective hydraulic fluid for use in aircraft should be mentioned. Viscosity should be reasonably high at high temperatures and, on the other hand, not too low at low temperatures. In addition, the rate of change of viscosity in relation to changes in temperature or "viscosity index" should also be low. Other desirable qualities are: a low pour point so that the fluid will flow at low temperatures; low volatility within the range of temperatures usually met with to avoid evaporation; lubricity or capability of acting as a lubricant, as well as chemical stability, noninflammability (low autogenous ignition temperature) and inertness. As a means of meeting these specifications, plaintiffs claim the following (Cf. p. 34, plaintiffs' Ex. 16):

"8. The composition consisting essentially of dibutyl phenyl phosphonate and a sufficient proportion of a poly alkyl methacrylate the alkyl groups of which have from 4 to 6 carbon atoms and said poly alkyl methacrylate has an average molecular weight within the range of 2,000 to 12,000 and a molecular weight range of 1,500 to 14,000 to increase the viscosity of the composition at 210° F. above 3.0 centistokes and to increase the viscosity index of the composition above 150, said composition having a viscosity at −40° F. below 1000 centistokes and an autogenous ignition temperature above 1000° F.

"3. The composition as defined in claim 8 in which said poly alkyl methacrylate is poly butyl methacrylate.

"4. The composition as defined in claim 8 in which said poly alkyl methacrylate is poly amyl methacrylate.

"5. The composition as defined in claim 8 in which said poly alkyl methacrylate is poly hexyl methacrylate.

"7. The composition as defined in claim 8 having from 0.2 to 10 per cent of said poly alkyl methacrylate."

Thus, plaintiffs' claims consist of one independent claim (8), and four limited, dependent claims (3, 4, 5 and 7).

The Watson patent is entitled "Lubricant and Hydraulic Fluid Compositions" and pertains, as it states in column 1:

" * * * to compositions containing one or more organic phosphorus containing compounds, e. g., organic phosphates, phosphonates, phosphinates, etc., and a combination of additives which produce stable, non-corrosive compositions, such as improved fluids especially suitable for use as lubricants and in hydraulic mechanisms, particularly aircraft hydraulic apparatus."

In column 3 of the Watson patent there is the following reference to a phosphorus-containing compound as part of a list of such compounds: "a mixed alkyl aryl phosphonate, for example an alkyl aromatic phosphonate such as dioc-

tyl styrene phosphonate". These phosphorus-containing compounds form the principal ingredients of the fluids described by Watson. In order to improve viscosity characteristics, it is stated in Watson that several viscosity-index improvers are usually added to the main ingredient. Special reference is made in column 6 to "polymerized methacrylic acid esters" as being suitable additives to improve the viscosity-index of the phosphorus compounds.

Thus in the application of plaintiffs, the basic compound is "dibutyl phenyl *phosphonate*" and in Watson there is reference to a "mixed alkyl aryl *phosphonate* such as dioctyl styrene phosphonate". With reference to the viscosity-index improver, Watson mentions *"polymerized methacrylic acid esters"* with the preferable weight range of the molecules being from 5,000 to 15,000, whereas plaintiffs rely on a *poly(merized)* alkyl *methacrylate* (ester of methacrylic acid) with 4 to 6 carbon atoms in the alkyl groups and a molecular weight range from 1,500 to 14,000.

The position of the defendant, in essence, is that Watson teaches that phosphonate compounds form a sound basic material in aircraft hydraulic fluids and that viscosity-index improving agents are usually added to them, such as polymerized esters of methacrylic acid. Within the scope of this teaching, defendant contends, lies the particular combination claimed by plaintiffs; namely, one particular phosphonate plus one particular polymerized methacrylate. As the Patent Office examiner stated in his ruling dated July 21, 1953:

> "No invention resides in determining that specific compounds embraced within the genus have the property attributed to the genus by the prior art. In the absence of unusual and unexpected results, no invention is seen in applicants particular selection."

In answer to this ruling, plaintiffs argued that Watson's disclosures are so broad as to include thousands of possible compounds and that nowhere in Watson was the specific combination of dibutyl phenyl phosphonate plus poly alkyl methacrylate disclosed. After reconsideration, the examiner stated in his communication of January 24, 1955, that his ruling did not mean that plaintiffs' claimed compounds lacked novelty but that they did not constitute invention in view of Watson's references to the general classes of phosphonate and methacrylate compounds. It is the examiner's ruling that the selection of particular compounds from these classes to accomplish a result contemplated by Watson would be obvious to one skilled in the art of hydraulic fluids. By means of affidavits, plaintiffs sought to bring to the attention of the Board of Appeals of the Patent Office the results of experiments that revealed that certain methacrylate compounds other than those specified by plaintiff were not even soluble in dibutyl phenyl phosphonate, thus, indicating that if one followed Watson's suggestions, unfavorable results would follow rather than the success met with by plaintiff. In affirming the decision of the examiner the Board of Appeals stated on page 59 of plaintiffs' Ex. 16:

> " * * * Moreover, while the affidavits may establish that certain selected poly alkyl methacrylates are incompatible with dibutyl phenyl phosphonate, they do not at the same time show what effect these methacrylates have when added to the specific mixed alkyl aromatic phosphonate disclosed by Watson, namely, *dioctyl styrene phosphonate."*
> (Emphasis supplied.)

In order to satisfy this requirement, plaintiffs made efforts to obtain a quantity of the above compound for testing. It was learned that by itself, as well as in combination with a polymerized methacrylic acid ester, the suggested compound was in a solid state at −40° F. The relevance of this result is disputed, however, by defendant who contends that plaintiffs, in their experiments, failed to use the correct compound of dioctyl styrene phosphonate as set forth in Watson.

Both plaintiff and the Patent Office agree on the fact that Watson does not disclose the specific composition claimed by the plaintiff and thus this composition does possess novelty. The question then arises whether plaintiffs' fluid meets the test set forth in 35 U.S.C.A. § 103:

"A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

The determination of what would have been obvious is not always an easy matter, particularly in the field of chemistry. It was pointed out by our Court of Appeals in Naamlooze Venootschafs, etc. v. Coe, 1942, 76 U.S.App.D.C. 313, 132 F.2d 573, 575 that:

"* * * analogical reasoning is more restricted in chemistry than in the field of mechanics * * * because chemistry is essentially an experimental science in which predictions cannot be made with the same certainty that they can be in mechanics * * * (but) *it does not follow that every new and useful result accomplished by experiment is patentable.*" (Emphasis supplied.)

■■ It is also important to note that this action is not a *review* of a decision of the Patent Office but a proceeding in equity in which all the issues relating to patentability are to be tried de novo. Of course, this does not affect the rule that decisions of the Patent Office are accorded a presumption of correctness. Abbott v. Coe, 1939, 71 U.S.App.D.C. 195, 109 F.2d 449. Nevertheless, this presumption may be rebutted by competent evidence of sufficient weight. Plaintiffs here may prevail only if, on the entire evidence, the court is left with a definite and firm conviction, based on its subjective opinion or judgment, that a mistake has been committed by the Patent Office. L-O-F Glass Fibers Company v. Watson, 1955, 97 U.S.App.D.C. 69, 228 F.2d 40.

■ The consistent position of both the examiner and the Board of Appeals with respect to plaintiffs' claims is stated at the end of the Board's ruling at page 59 of Plaintiffs' exhibit 16:

"* * * We are of the opinion that no invention is involved in experimenting within the limits of the classes of polyalkyl methacrylates and mixed alkyl aromatic phosphonates disclosed by the reference to determine which combinations have the greatest compatibility and exhibit the most desirable properties as aircraft hydraulic fluids."

There is evidence to indicate both from the very terminology and from the testimony on cross-examination of Mr. Seil, a chemist employed by Douglas Aircraft, that both of the constituents of plaintiffs' compound fall within the general classes of mixed alkyl aryl phosphonates and polymerized methacrylic acid esters mentioned by Watson as effective for use in hydraulic fluids. Plaintiff did carry out experiments designed to show the extent to which the suggestions of Watson were operative especially in comparison with the good results claimed for plaintiffs' compound. But this evidence is not necessarily conclusive. Although plaintiffs introduced evidence before the court which was not before the Patent Office, it is the court's responsibility, in an equity proceeding, to determine the precise weight to be given to each item of testimony. It must consider all factors that might affect the testimony such as interest, bias or relationship to one of the parties. This is especially important where the court is asked to rely heavily upon the testimony of the patent applicant and of employees of the company to which the claims have been assigned. As our Court of Appeals had occasion

to comment in Bullard Co. v. Coe, 1945, 79 U.S.App.D.C. 369, 147 F.2d 568, where plaintiffs' engineer had tested a prior patented device and had found it inoperative:

"It is not apparent that the witness wished his experiment to succeed. He had been employed by appellant company for nine years and there is nothing to suggest that he was not a loyal employee. We have not the slightest doubt of his honesty, but the fact remains that an interest in losing the game is a poor qualification for winning it. Theoretically a man may 'try,' as the witness tried, to achieve a result adverse to his own interest, but his effort is not likely to be very efficient. His lack of success may be evidence, but it would be strange to regard it as entirely conclusive evidence, that an equally competent man who desired success could not have achieved it.

"In order to show that the appealed claims are inventive it was necessary for appellants to prove that Svenson (1) was not operative and (2) could not be made operative by slight changes within the skill of a competent mechanic or, in other words, without inventive genius. Crown Cork & Seal Co. v. Aluminum Stopper Co., 4 Cir., 108 F. 845, 849; Manhattan Book Casing Mach. Co. v. E. C. Fuller Co., D.C., 274 F. 964, affirmed, 2 Cir., 204 F. 286. The burden of proof was on appellants. Their engineer's evidence would have supported a finding in their favor but we cannot say that it required such a finding. Decision turned upon balancing the more or less probable correctness of the engineer's opinion against the probable correctness of the action of the Patent Office in granting Svenson's patent and in denying the claims in suit. We are not to disturb the action of the Patent Office and the District Court unless we think it clearly wrong."

Furthermore, plaintiff has conceded that the dioctyl styrene phosphonate mentioned by Watson has three isomers or equivalent compounds with differing properties and that only two of the three had actually been tested.

 The court has carefully considered all of the testimony, exhibits and briefs filed in this case and it has been unable to arrive at a definite and firm conviction that a mistake was committed by the Patent Office in its finding that plaintiffs' hydraulic fluid is not patentable over the prior art. Judgment, therefore, should be entered for the defendant.

Counsel will prepare appropriate findings of fact, conclusions of law and an appropriate order within one week from this date.